UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **AHBP LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. **5:22-cv-96** |
| | § | |
| **THE LYND COMPANY,** | § | **JURY TRIAL DEMANDED** |
| **BIO SUPPLIES LLC, AND** | § | |
| **VIA CLEAN TECHNOLOGIES, LLC,** | § | |
| | § | |
| *Defendants.* | § | |

## ORIGINAL COMPLAINT

Plaintiff AHBP LLC ("Plaintiff"), by its undersigned attorneys, complaining of Defendants The Lynd Company, Bio Supplies LLC, and Via Clean Technologies LLC (collectively, "Defendants"), alleges as follows:

### NATURE OF ACTION

1. As the COVID-19 pandemic ravaged the world in the summer of 2020, Plaintiff agreed to market and distribute in Argentina a surface disinfectant/cleaner that Defendants manufactured and claimed would destroy, among other things, the virus that causes COVID-19 (the "Product").

2. Aware that Plaintiff needed to obtain approval from Argentina's National Administration of Drugs, Foods and Medical Devices ("ANMAT") in order to sell the product in Argentina, Defendants repeatedly assured Plaintiff that the Product was sufficient to meet the requisite government quality standards. Relying on these representations, Plaintiff agreed to purchase hundreds of thousands of dollars of the Product to sell and market in Argentina, began

its marketing campaign and contracting with buyers, and expected Defendants to perform by delivering the bargained-for Product.

3. In reality, Defendants knew their product could not meet ANMAT's standards. As part of a sophisticated joint scheme to defraud Plaintiff, Defendants knowingly falsified and altered laboratory reports that they provided to Plaintiff and ANMAT to make the Product appear significantly more effective than it actually is and meet ANMAT's stringent requirements.

4. Fortunately, Plaintiff discovered that Defendants' had falsified the reports and Plaintiff did not sell the Product, which would have lulled Argentinians into a false sense of security regarding the COVID-19 virus. Solely due to Defendants' fraud and other wrongdoing, Plaintiff was forced to end its media campaign undertakings, could not fulfill its contractual obligations to its buyers, and lost tens of millions of dollars in out of pocket costs and lost profits.

5. Accordingly, Plaintiff brings this action to recover at least $90,426,300 in money damages, including lost profits and out of pocket expenses, resulting from Defendants' fraud, breach of contract, and other misconduct.

## PARTIES

6. Plaintiff is a Florida limited liability company, whose sole member is a citizen of Florida. At all relevant times, Plaintiff maintained a principal place of business in New York, New York.

7. Defendant The Lynd Company, upon information and belief, is a Texas corporation with a principal place of business at 4499 Pond Hill Road, Shavano Park, Texas.

8. Defendant Bio Supplies LLC, upon information and belief, is a Delaware limited liability company with a principal place of business at 4499 Pond Hill Road, Shavano Park, Texas.

9. The Lynd Company and Bio Supplies, upon information and belief, share an office address, have an overlap in ownership, directors, and officers, including David Lynd, Adam Lynd

and Matthew Merritt, and personnel, and their owners, directors and employees use The Lynd Company email addresses to conduct business purportedly on behalf of Bio Supplies. The Lynd Company's owners, including David Lynd, Adam Lynd and Matthew Merritt, created Bio Supplies in May 2020 to use Bio Supplies to operate and conduct The Lynd Company's cleaning supply business, but does so with the assets and personnel of The Lynd Company. Upon information and belief, The Lynd Company does not treat Bio Supplies as an independent profit center, and funds are commingled between The Lynd Company and Bio Supplies. The Lynd Company and Bio Supplies, upon information and belief, do not deal with each other at arm's length, use each other's property as if it were their own, and pay and guarantee the debts of each other. In short, The Lynd Company and Bio Supplies are alter egos and The Lynd Company dominated Bio Supplies with respect to its transaction and dealings with Plaintiff and used Bio Supplies to create a veneer of legitimacy to the transaction. The Lynd Company and Bio Supplies LLC are collectively referred to herein as "Bio Supplies."

10. Defendant Via Clean Technologies LLC ("Via Clean"), upon information and belief, is a Pennsylvania limited liability company with a principal place of business at 230 S Broad Street, Suite 1201, Philadelphia, Pennsylvania.

## JURISDICTION AND VENUE

11. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiff and Defendants are domiciled in different states, and the amount in controversy exceeds $75,000.

12. Venue is proper pursuant to the parties' October 2020 agreement that sets venue in the federal courts located in Bexar County, Texas, and pursuant to 28 U.S.C. § 1391(b)(1).

## FACTS

**A.     Defendants' Fraudulent Scheme to Induce Plaintiff into Purchasing the Product**

13.     As the COVID-19 pandemic ravaged Argentina in the summer of 2020, Plaintiff began negotiating with Bio Supplies to market and sell Bioprotect 500 (defined above as the Product), which they held out as a disinfectant/cleaner manufactured by Via Clean that would effectively destroy the virus that causes COVID-19.

14.     During those negotiations, Plaintiff repeatedly advised Bio Supplies that it needed certain information concerning the Product's composition, manufacturing and quality controls, toxicology and purported 2-year shelf life in order to obtain approval from ANMAT to sell the Product in Argentina.  Plaintiff repeatedly advised that receipt of this information was vital to Plaintiff's decision to enter into an agreement with Bio Supplies to purchase, sell, and market the Product.

15.     Throughout August and September 2020, Bio Supplies represented that it could not provide the information Plaintiff requested due to confidentiality concerns.  Nonetheless, to induce Plaintiff to enter into an agreement, Bio Supplies repeatedly confirmed to Plaintiff over those two months that the Product would meet the applicable standards and promised to provide the relevant information once the parties signed a written contract.

16.     Unknown to Plaintiff at the time, these representations were false and Bio Supplies knew they were false.

17.     Indeed, despite Bio Supplies' representations, Bio Supplies knew that the Product would not, and could not, perform as Defendants claimed and could not meet ANMAT's standards to allow the Product to be sold in Argentina.  Rather, as set forth below, Bio Supplies, at all times, intended to defraud Plaintiff by providing fraudulent, doctored laboratory reports that grossly and falsely exaggerated the efficacy of the Product.

18. In reliance on Bio Supplies' representations concerning the Product and its quality standards, and with no way to verify them, Plaintiff entered into the Exclusivity and Resale Agreement with Bio Supplies, dated October 2020 (the "Agreement").

19. Pursuant to the Agreement, Bio Supplies agreed to grant Plaintiff an exclusive license to sell the Product in Argentina. The Agreement required Plaintiff, within 45 days of execution, to purchase no less than $100,000 worth of the Product from Bio Supplies and to spend no less than $350,000 to advertise and market the Product in Argentina, with additional, escalating Product purchase requirements following thereafter.

B. **Defendants Continue Their Scheme to Defraud Plaintiff**

20. After entering into the Agreement, Bio Supplies repeatedly promised that it would soon provide Plaintiff with information purportedly identifying the Product's composition, manufacturing and quality controls, and toxicology and supporting its purported 2-year shelf life.

21. In reliance on Bio Supplies' representations, and to fulfill its contractual obligations under the Agreement, Plaintiff began preparing its media campaign to market and sell the Product, including by hiring employees and designers, consulting with lawyers, accountants, biologists and virologists, renting warehouse and office space, and entering into contracts with buyers in Argentina.

22. Finally, on December 1, 2020, Bio Supplies provided Plaintiff with some of the information that Plaintiff had been requesting since August 2020, notably including numerous purported reports from laboratories concerning the Product's efficacy and chemical composition. Thereafter, following repeated requests from Plaintiff, Bio Supplies caused a purported stability report (the "Report") regarding the Product performed by Cambridge Materials Testing

("Cambridge"), a Canadian laboratory, to be sent to Plaintiff and ANMAT, which report ANMAT required to approve the Product for sale in Argentina.

23. After reviewing the Report, ANMAT proposed a number of questions to Plaintiff about the Product, including why the Product's "DMODA" content was part of the calculation of the Product's "TPOA" content.

24. Plaintiff requested the information from Bio Supplies necessary to answer ANMAT's questions. Bio Supplies failed to respond to Plaintiff.

25. To obtain answers, Plaintiff contacted Cambridge directly. Cambridge advised Plaintiff that the Report that had been sent to Plaintiff and ANMAT was "not the same as what we had originally issued. For instance, the product identification *is different* and the TPOA values in the Table on page 3 *have been altered* … Please note, if you perform the equation with the numbers in the altered report, *the TPOA will not yield the values shown in the Table* on page 3." (emphasis added).

26. Plaintiff immediately demanded answers from Bio Supplies and its agents regarding the altered Report that Bio Supplies provided to ANMAT.

27. To further conceal its scheme, Bio Supplies initially denied altering the Report.

28. Then, on March 5, 2021, Bio Supplies finally admitted that it and Via Clean had, in fact, provided ANMAT with a version of the Report that had been "modified from the original."

29. In other words, Defendants admitted that they fraudulently provided Argentina's version of the FDA with a falsified document on Plaintiff's behalf and in support of its application to sell the Product in Argentina.

30. Bio Supplies and Via Clean's admission, however, severely underplayed their fraud. Indeed, after Plaintiff finally received an original version of the Report from Cambridge, a

comparison of the version that Bio Supplies sent to ANMAT and Plaintiff with the original revealed that the product on which the Report was actually based was not the Product at all, but rather a different product containing a *whopping 72%* of the Product's active ingredient, whereas the Product contains *a mere 5%* of that ingredient. Not only would a product containing a super concentrated amount of the active ingredient be expected to significantly outperform the Product, but it would also have a much longer shelf life than the diluted Product.

31. As such, the Report that Bio Supplies sent to ANMAT did not represent the properties of the Product at all and parts of the Product information provided by Defendants were false and misleading.

32. Indeed, Defendants' fraudulent misrepresentations became crystal clear when, on March 31, 2021, the United States Environmental Protection Agency issued a Stop Sale, Use or Removal Order to Via Clean ordering Via Clean to stop marketing the Product with claims that it is effective against public health related pathogens such as the virus that causes COVID-19.

33. As a result of Defendants' fraudulent scheme, breaches and other misconduct, Plaintiff was unable to sell the Product in Argentina – the only place in the world that Plaintiff has a license to sell the Product. Plaintiff's buyers refused to continue doing business with Plaintiff because Plaintiff could not fulfill its obligations to deliver the Product, its business reputation was severely diminished, and its pursuit of the media campaign was rendered a total loss.

34. As such, Defendants have damaged Plaintiff in the amount of no less than $90,426,300, including $89,600,000 in lost profits and $826,300 in out of pocket expenses.

## FIRST CAUSE OF ACTION

**(Fraudulent Inducement Against The Lynd Company and Bio Supplies LLC)**

35. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

36. As set forth above, The Lynd Company and Bio Supplies LLC fraudulently induced Plaintiff to enter into the Agreement by making materially false and misleading representations, and omitting material information peculiarly within Defendants' knowledge.

37. As set forth above, prior to entering into the Agreement, The Lynd Company and Bio Supplies LLC knew that the Product would not perform pursuant to their representations and would not satisfy ANMAT's requirements.

38. As set forth above, The Lynd Company and Bio Supplies LLC had actual knowledge of the materially false and misleading representations and omissions in their communications with Plaintiff; or, in the alternative, The Lynd Company and Bio Supplies LLC had a reckless disregard of the materially false and misleading representations and omissions contained therein.

39. As set forth above, The Lynd Company and Bio Supplies LLC were aware that Plaintiff would rely upon Defendants' representations in determining to enter into the Agreement.

40. As set forth above, Plaintiff relied on The Lynd Company and Bio Supplies LLC's misrepresentations in deciding to execute the Agreement.

41. Plaintiff was unaware of, and could not have discovered through the exercise of reasonable diligence, The Lynd Company and Bio Supplies LLC's materially false and misleading representations and omissions.

42. As set forth above, The Lynd Company and Bio Supplies LLC are alter egos.

43. As a direct and proximate result of The Lynd Company and Bio Supplies LLC's fraud, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $826,300, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

## SECOND CAUSE OF ACTION
### (Fraud Against Defendants)

44. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

45. As set forth above, Defendants made materially false and misleading representations and omissions to Plaintiff, including providing the fraudulent, falsified and altered Report to Plaintiff and ANMAT.

46. As set forth above, Defendants had actual knowledge of the materially false and misleading representations and omissions in their communications with Plaintiff; or, in the alternative, Defendants had a reckless disregard of the materially false and misleading representations and omissions contained therein.

47. As set forth above, Defendants intended to induce Plaintiff to act upon their materially false and misleading representations and omissions.

48. Plaintiff justifiably relied on Defendants' false and misleading misrepresentations in, among other things, deciding to execute the Agreement, applying to ANMAT for approval of the Product, preparing a media campaign, expending funds, and contracting with buyers.

49. As set forth above, The Lynd Company and Bio Supplies LLC are alter egos.

50. As a direct and proximate result of Defendants' fraud, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $90,426,300, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

## THIRD CAUSE OF ACTION
### (Negligent Misrepresentation Against Defendants)

51. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

52. As set forth above, Defendants made false and misleading representations to Plaintiff while acting in the ordinary course of their business, or in a transaction in which Defendants had a pecuniary interest.

53. As set forth above, Defendants conveyed false and misleading information to guide Plaintiff in Plaintiff's own business.

54. As set forth above, Defendants did not exercise reasonable care or competence in obtaining or communicating the false and misleading information.

55. As set forth above, Plaintiff justifiably relied on Defendants' false and misleading misrepresentations in, among other things, deciding to execute the Agreement, applying to ANMAT for approval of the Product, preparing a media campaign, and contracting with buyers.

56. As set forth above, The Lynd Company and Bio Supplies LLC are alter egos.

57. As a direct and proximate result of Defendants' fraud, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $90,426,300, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of Lanham Act § 43(a) Against Defendants)**

58. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

59. As set forth above, Defendants made false and misleading representations and omissions as to the Product, which affects interstate commerce.

60. As set forth above, Defendants' false and misleading representations and omissions actually deceived, or in the alternative had a tendency to deceive, a substantial portion of their intended audience.

61. As set forth above, Defendants' deception is material in that it is likely to influence purchasing decisions.

62. As a result of, Plaintiff was likely to be, and in fact was, injured by Defendants' material deception using false and misleading representations and omissions as to the Product.

63. As set forth above, The Lynd Company and Bio Supplies LLC are alter egos.

64. As a direct and proximate result of Defendants' false advertising, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $90,426,300, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Trade Disparagement Against Defendants)

65. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

66. As set forth above, Defendants published false and disparaging information about Plaintiff by providing ANMAT with the falsified Report on Plaintiff's behalf.

67. As set forth above, Defendants acted with ill will or intended to interfere in the economic interest of Plaintiff when publishing the false and disparaging information in the Report, or in the alternative, Defendants knew they were making a false statement or acted with reckless disregard of the materially false information contained therein.

68. As set forth above, Defendants acted without privilege when publishing the false and disparaging information in the Report on Plaintiff's behalf.

69. As set forth above, The Lynd Company and Bio Supplies LLC are alter egos.

70. As a direct and proximate result of Defendants' trade disparagement, Plaintiff suffered special damages, including damage to Plaintiff's reputation, loss of trade or other dealings with buyers of the Product and/or loss of trade or other dealings in Argentina, and lost profits, in

an amount to be determined at trial, but in no event less than $90,426,300, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Breach of Contract Against The Lynd Company and Bio Supplies LLC)

71. Plaintiff repeats, reiterates, and re-alleges each and every allegation as contained in the above paragraphs with the same force and effect as if fully set forth herein.

72. As set forth above, Plaintiff and Bio Supplies entered into a valid and binding contract.

73. As set forth above, Plaintiff fully performed under the parties' contract.

74. As set forth above, Bio Supplies breached the parties' contract.

75. As set forth above, The Lynd Company and Bio Supplies LLC are alter egos.

76. As a direct and proximate result of The Lynd Company and Bio Supplies LLC's breach of the Agreement, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $90,426,300, plus costs, interest, expenses and attorneys' fees in amounts to be determined at trial.

## JURY DEMAND

Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby requests that the Court grant the following relief:

a. Judgment in Plaintiff's favor and against Defendants, jointly and severally, in an amount to be determined at trial, but in no event less than $90,426,300, plus pre-judgment interest;

b. Plaintiff's costs and disbursements incurred in this suit;

c. Plaintiff's attorneys' fees to the full extent permitted by law; and

d. Any such other and further relief as the Court may deem just and proper.

Dated: February 3, 2022.                    Respectfully submitted,

                                                      **GORDON & REES**

*/s/ Robert A. Bragalone*
**ROBERT A. BRAGALONE**
State Bar No. 02855850
BBragalone@grsm.com
2200 Ross Ave., Suite 3700
Dallas, Texas 75201
214-231-4660 (Telephone)
214-461-4053 (Facsimile)


**OVED & OVED LLP**

TERRENCE A. OVED, ESQ.
(*pro hac vice* application forthcoming)
DARREN OVED, ESQ.
(*pro hac vice* application forthcoming)
GLEN LENIHAN, ESQ.
(*pro hac vice* application forthcoming)
JENNIFER R. PIERCE, ESQ.
(*pro hac vice* application forthcoming)
401 Greenwich Street
New York, New York 10013
Tel:  212.226.2376