IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BIO SUPPLIES, LLC, | § | |
| *Third-Party Plaintiff* | § | |
| | § | |
| -vs- | § | SA-22-CV-00096-XR |
| | § | |
| KIBOKO, INC., JOSEPH RAICH, | § | |
| *Third-Party Defendants* | § | |
| | § | |

## ORDER ON MOTION FOR DEFAULT JUDGMENT

On this date, the Court considered Third-Party Plaintiff Bio Supplies, LLC's motion for default judgment against Third-Party Defendants Kiboko, Inc. and Joseph Raich (ECF No. 140). The Third-Party Defendants have not responded and the time to do so has expired. After careful consideration, the Court issues the following order.

## BACKGROUND

In 2022, AHBP, LLC ("AHBP") brought this action against The Lynd Company ("Lynd"), Bio Supplies, LLC ("Bio Supplies"), and Via Clean Technologies, LLC ("Via Clean") based on business injuries arising out of a contract for the exclusive right to distribute an allegedly defective surface cleaner known as "Bioprotect 500" (the "Product") in Argentina. ECF No. 25.

## I.    The Sales Representative Agreement

Lynd and Bio Supplies (the "Lynd Companies") purchased the Product from Via Clean, the distributor, which obtained its supply from the manufacturer, Kiboko, Inc. ("Kiboko"), pursuant to a Sales Representative Agreement (the "Agreement" or "SRA") executed in April 2020. ECF No. 55 ¶¶ 10, 17; ECF No. 80 ¶ 10.

Under the Agreement, Kiboko manufactured the Product, and Via Clean supplied it to Lynd Clean Living LLC ("Clean Living")—Bio Supplies' parent company and a non-exclusive

independent sales representative for the Product in the continental United States. *See* ECF No. 80 ¶ 10; ECF No. 80-1 § 1.1 (Agreement). Joseph Raich—an officer, director, and shareholder of Kiboko—executed the Agreement on behalf of Kiboko. *See* ECF No. 80 ¶ 5; ECF No. 80-1 at 9.

Under Section 4.3(f) of the SRA, Kiboko and Via Clean represented and warranted that the Product "compl[ies] with all applicable federal, state, and administrative laws, rules, orders, codes, statutes, or regulations ('Laws') applicable to the Product[] and Supplier and Manufacturer have no knowledge of any pending [sic]." ECF No. 80-1 at 4.

Further, Section 12.1 contained a general indemnification clause:

> Each Party (as "Indemnifying Party") shall indemnify, defend, and hold harmless the other Party and its officers, directors, managers, members, equity holders, employees, agents, affiliates, successors, and permitted assigns (collectively, "Indemnified Party") against any and all losses, damages, liabilities, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, the costs of enforcing any right to indemnification under this Agreement, and the cost of pursuing any insurance providers, incurred by Indemnified Party, relating to any claim of a third party or Indemnified Party (collectively, "Losses") arising out of Indemnifying Party's negligence, willful misconduct, or breach of this Agreement.

*Id.* at 7.

## II.    The Resale Agreement

In October 2020, AHBP entered into an Exclusivity and Resale Agreement ("Resale Agreement") with Bio Supplies for the exclusive right to distribute the Product in Argentina. ECF No. 80 ¶ 14; ECF No. 27-1. During contract negotiations, AHBP made certain requests for information about the Product that Bio Supplies allegedly did not have or would not provide. *Id.* ¶ 19; *see* ECF No. 25 ¶ 20 (AHBP needed information about Product's composition, manufacturing, quality controls, toxicology, and shelf life to obtain approval to sell it in Argentina).[1]

---

[1] While Bio Supplies alleges that it could not provide the requested information because it did not have access to it, ECF No. 80 ¶ 19, AHBP alleged that Bio Supplies declined to produce the information due to confidentiality concerns but promised to provide the relevant information once the parties signed a written contract, ECF No. 25 ¶ 21.

Bio Supplies asserts that it did not have independent knowledge of the Product's use, efficacy, or conformity with relevant regulations and had no role in testing, formulation, or determination of uses for the Product. ECF No. 80 ¶¶ 16–17. Indeed, Bio Supplies denies making any representations about the Products prior to, during, or after the execution of the Resale Agreement concerning the Product's composition, use, conformity with applicable regulations, or efficacy without approval or direction from Raich, Via Clean, or Kiboko. *Id.* ¶ 22. Instead, in entering the Resale Agreement, Bio Supplies allegedly relied on representations from Raich, Kiboko, and Via Clean that the Product would comply with all applicable regulations, including those in Argentina, and regarding the composition, use, and efficacy of the Product. *Id.* ¶¶ 18, 20.[2]

After executing the Resale Agreement, AHBP asked Bio Supplies for chemical testing information about the Product. On or around December 1, 2020, Raich sent a stability report performed by Cambridge Materials Testing (the "Report") to Bio Supplies in San Antonio, Texas, which Bio Supplies then passed the Report along to AHBP. *Id.* ¶ 24. According to Bio Supplies, neither Clean Living nor Bio Supplies was involved in the creation of the Report. *Id.*

After Argentinian regulators reviewed the Report, AHBP learned that it did not accurately depict the Product's chemical composition and raised its concerns with Bio Supplies. *Id.* ¶ 25. AHBP alleged that the Report had been altered at some point. ECF No. 25 ¶¶ 29–31.

On March 4, 2021, in response to AHBP's concerns, Raich executed a sworn affidavit acknowledging that he had "accidentally" provided the wrong Report to Bio Supplies. ECF No. 80-2, Raich Decl. The affidavit states in relevant part:

> 1.    On or before December 1, 2020, I was asked to send confirmatory chemical testing information to Matt Merritt at Bio Supplies LLC in San Antonio Texas. One of the documents that I accidentally sent had been modified from the original information. This document was for

---

[2] Raich, Kiboko, and Via Clean were allegedly aware of the Resale Agreement and in fact communicated directly with AHBP prior to it entering into the Resale Agreement with Bio Supplies. ECF No. 80 ¶ 15.

stability testing for an antimicrobial product that we distribute called BioProtect. The document along with others that were not questioned after review was found to be wrong. As soon as this was brought to my attention, I reached out to Dr. Lukas Porosa and asked if he would reach out to the lab and have the lab send him the non-modified correct paperwork. Dr. Porosa has since sent the correct documents.

2.    I am not a chemist and accidentally forwarded an obviously corrupted or incorrect file that was in a data file in my archives. From my understanding the actual lab results were of the passing or approved results.

3.    I apologize for any misunderstandings this may have caused and ask that you accept my apologies for any inconvenience.

*Id.*; *see also* ECF No. 80 ¶¶ 26, 44–45, 52–53, 60–61 (incorporating the Raich Declaration into the Amended TPC, by reference).

## III.    Procedural History

Nearly a year after it received Raich's declaration and the updated Report, AHBP initiated this action against Lynd, Bio Supplies, and Via Clean in February 2022, alleging that Defendants had misrepresented the quality of the Product and its regulatory compliance. *See* ECF No. 1; ECF No. 25 ¶¶ 20–24. AHBP alleged that, "[a]s a result of [this] fraudulent scheme," "[it] was unable to sell the Product in Argentina," and suffered losses to its customer base, business reputation, and pecuniary investment, totaling $90,426,300 in damages. ECF No. 25 ¶¶ 39, 40. AHBP asserted state-law claims sounding in fraud and under the Lanham Act against the Lynd, Bio Supplies, and Via Clean and claims for breach of contract against the Lynd and Bio Supplies.

Bio Supplies asserted a crossclaim against Via Clean (ECF No. 54) and filed a Third-Party Complaint against Kiboko and Raich (ECF No. 55). Kiboko and Raich filed their answer in February 2023. ECF No. 67. Thereafter, Bio Supplies filed an Amended Third-Party Complaint ("Amended TPC"), the operative pleading. ECF No. 80.

In August 2023, counsel for Kiboko and Raich withdrew its representation. *See* Text Order

4

dated Aug. 25, 2023 (granting ECF No. 88). Because no successor attorney was identified, and corporations cannot proceed *pro se* in federal court, the Court directed Kiboko to secure legal counsel and cause them to enter an appearance by no later than September 25, 2023. ECF No. 90. The Court cautioned that "[f]ailure to obtain counsel may result in the Court entering default against Kiboko in this matter." *Id.* at 2 (citing *Memon v. Allied Domecq QSR*, 385 F.3d 871, 874 (5th Cir. 2004)). The Court further directed Raich, by no later than September 25, 2023, to (1) file a written advisory to the Court that he intended to proceed without counsel; (2) obtain new counsel and have that counsel enter a written appearance; or (3) move for additional time to comply. *Id.*

In October 2023, having received no response from Kiboko or Raich, the Court directed Bio Supplies to move for entry of default against Kiboko and Raich but advised that, to avoid the possibility of inconsistent judgments, the Court would postpone consideration of default judgment until the remaining claims among AHBP, Via Clean, and Bio Supplies had been resolved. *See* ECF No. 97 at 3. Upon Bio Supplies' motion, the Clerk entered default against Kiboko and Raich in November 2023. *See* ECF Nos. 107, 108.

Lynd and Bio Supplies eventually entered a Confidential Settlement Agreement (the "Settlement") with AHBP under which, in May 2024, the Lynd Companies paid $375,000 to AHBP for the dismissal of its claims against them. *See* ECF No. 121-2.

Bio Supplies now seeks default judgment against both Kiboko and Raich on its claims for contractual indemnification, common-law indemnification and contribution, fraud, and negligent misrepresentation. ECF No. 140. Bio Supplies asks the Court to award (1) damages in the amount of $375,000 and (2) attorneys' fees and costs incurred in defending the claims brought by AHBP in the underlying litigation and for bringing this action against Kiboko and Raich.

## DISCUSSION

### I.    Legal Standard

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2).

A party is not entitled to a default judgment simply because the defendant is in default, however. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

In considering a motion for default judgment, the Court must determine: (1) whether default judgment is procedurally warranted, (2) whether the complaint sets forth facts sufficient to establish that the plaintiff is entitled to relief, and (3) what form of relief, if any, the plaintiff should receive. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008). The Court examines each factor in turn.

### II.    Analysis

#### A.    Procedural Propriety of Default Judgment

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

### 1.    Subject Matter Jurisdiction

The Court has an affirmative duty to look into its subject matter jurisdiction. *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001). Here, Bio Supplies asserts that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

Under 28 U.S.C. § 1332(a), "[t]he district courts . . . have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(2) citizens of a State and citizens or subjects of a foreign state [other than lawful permanent residents of the United States domiciled in the same State]." For diversity jurisdiction to be proper, the "court must be certain that all plaintiffs have a different citizenship from all defendants." *Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1258 (5th Cir. 1988). The party asserting federal jurisdiction must "distinctly and affirmatively allege" the citizenship of the parties. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

To begin, the amount in controversy, $375,000, clearly exceeds the statutory minimum.

Bio Supplies has also adequately alleged the citizenship of both Third-Party Defendants. Kiboko, as corporation, is a citizen of its state(s) of incorporation and of the state in which its principal place of business is located, as determined by the "nerve center" test. 28 U.S.C. § 1332(c)(1); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005); *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Bio Supplies alleges that Kiboko is a Florida corporation with a principal place of business in Juniper, Florida, and is thus a citizen of Florida. ECF No. 80 ¶¶ 3–4; ECF No. 140 at 8. For individuals like Raich, "citizenship has the same meaning as domicile," and "the place of residence is prima facie the domicile." *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954). Bio Supplies alleges that Raich is a resident and citizen of Florida. *See* ECF No. 80 ¶¶ 3–4; ECF No. 140 at 8.

Moreover, in their Answer to Bio Supplies' initial Third-Party Complaint, both Kiboko and Raich admitted to being citizens of Florida. ECF No. 67 ¶¶ 8–9.

Bio Supplies has failed, however, to properly assert its own citizenship as a limited liability company. The citizenship of an LLC depends on the citizenship of all its members. *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310,314 (5th Cir. 2019); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). "A party seeking to establish diversity jurisdiction must specifically allege the citizenship of every member of every LLC or partnership involved in a litigation." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017).

The Third-Party Complaint alleges that both Bio Supplies and its sole member, Lynd Clean Living LLC, are Delaware limited liability companies with a principal place of business in Shavano Park, Texas. ECF No. 80 ¶¶ 1, 2. But the citizenship of an LLC does not depend on the entity's state of incorporation or principal place of business. In other words, Bio Supplies' citizenship appears to depend on the citizenship of the members of its parent—Clean Living— none of whom are identified in the operative pleading.

Although AHBP's Second Amended Complaint properly alleged Bio Supplies' citizenship upon information and belief, Bio Supplies denied those allegations in its answer. *See* ECF No. 25 ¶ 8 (identifying two natural persons, Adam D. Lynd and Matthew Merritt, both natural persons and citizens of Texas, as Bio Supplies' sole members); ECF No. 54 ¶ 8 ("Defendant admits only that it is a Delaware limited liability company with a principal place of business at 4499 Pond Hill Road, Shavano Park, Texas. Defendant denies each and every remaining allegation contained in Paragraph 8."). In short, the Court cannot discern Bio Supplies' actual citizenship from any of the pleadings and, accordingly, cannot determine whether it has jurisdiction over Bio Supplies' claims.

In the interest of efficiency, the Court will address the remainder of Plaintiff's motion, including the Court's personal jurisdiction over Kiboko and Raich and the sufficiency of Bio Supplies' substantive claims.

### 2.    Personal Jurisdiction

This Court has personal jurisdiction over the parties here as both Kiboko and Raich consented to personal jurisdiction and agreed that venue in this Court was proper in their Answer to Bio Supplies' initial Third-Party Complaint. ECF No. 67 ¶¶ 8–9. The personal jurisdiction requirement is a waivable right, and parties may consent to the jurisdiction of a court. *J.D. Fields & Co., Inc. v. Shoring Engineers*, 391 F. Supp. 3d 698, 705 (S.D. Tex. 2019) (internal citations omitted). Further, a failure to raise an objection to personal jurisdiction amounts to a waiver of that defense. FED. R. CIV. P. 12(h)(1).

### B.    Sufficiency of Plaintiff's Complaint

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although the Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); *see also* 10A Wright & Miller *et al.*, FED. PRAC. & PROC. CIV. § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.").

Thus, prior to a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance[.]" *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

### 1.    The pleading standard

Rule 8(a) provides that a claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery") (internal quotation marks and citations omitted). "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

Further, "[c]laims alleging fraud and fraudulent inducement are subject to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *Schnurr v. Preston*, No. 5:17–CV–512–DAE, 2018 WL 8584292, at *3 (W.D. Tex., May 29, 2018). Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. VMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). "Although the language of Rule 9(b) confines its requirements to claims of . . . fraud, the requirements of the rule apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998).

### 2. Choice of law

To determine the applicable law, a federal court sitting in diversity applies the choice of law rules of the forum. *Spence v. Glock, Ges.m.b.H.,* 227 F.3d 308, 311 (5th Cir. 2000). Accordingly, Texas choice of law rules apply.

The SRA contains a broad choice-of-law provision:

> This Agreement and all related documents, and all matters arising out of or relating to this Agreement, are governed by, and construed in accordance with, the laws of the State of New York, United States of America, without regard to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of New York.

ECF No. 80-1 at 8, ¶ 20.

Texas law gives effect to choice of law clauses regarding construction of a contract. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002). Thus, the Court will apply New York law to Bio Supplies' claim for contractual indemnification. Despite the apparent breadth

of the provision, however, it is inapplicable to Bio Supplies' common-law tort claims, given the Court's conclusions *infra* that (1) Bio Supplies is not an intended third-party beneficiary of the SRA and (2) the SRA did not govern Kiboko's conduct in this case. In other words, Bio Supplies' claims for common law indemnification and contribution, fraud, and negligent misrepresentation are not "matters arising out of or relating to" the SRA. *Id.*

Bio Supplies' common-law tort claims are likely governed by Texas law. Texas courts apply the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws to decide choice of law issues. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir.), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003) (citing *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000)). Section 145(2)[3] of the Restatement provides the factors to be considered when applying the general choice of law principles set forth in section 6 to tort cases.[4] Section 148 of the Restatement specifically addresses claims for fraud and misrepresentation.[5]

---

[3] Restatement (Second) of Conflict of Laws § 145(2) provides:

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

[4] Section 6 states that the factors relevant to choosing the applicable rule of law include:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

[5] Restatement (Second) of Conflict of Laws § 148(2) provides:

> When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil, residence, nationality, place of

The Restatement factors weigh in favor of applying Texas law. Although Bio Supplies' citizenship is unclear, the alleged injury occurred to Bio Supplies in Texas, and it arose from misrepresentations made in or directed to this state. ECF No. 80-2, Raich Decl. ¶ 1; ECF No. 80 ¶ 26. Specifically, Raich provided the allegedly altered Report to Bio Supplies in Texas, and Bio Supplies shared the Report with AHBP (also in Texas). The alleged misrepresentations in the Report allegedly led AHBP (a Texas-based company) to lose business and, accordingly, harmed Bio Supplies' business relationship with AHBP in Texas, resulting in this lawsuit  "Texas clearly has an interest in protecting its businesses from fraudulent activities." *Benchmark*, 343 F.3d 719, 727–28.

### 3.    Contractual indemnification

"Under New York Law, the right to contractual indemnification depends upon the specific language of the contract. [. . . a] contractual indemnification provision must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *In re Bridge Const. Servs. of Fla., Inc.*, 140 F. Supp. 3d 324, 331 (S.D.N.Y. 2015) (internal quotations and citations omitted). "When the intent is clear," however, "an indemnification agreement will be enforced even if it provides indemnity for one's own or a third party's negligence." *Bradley v. Earl B. Feiden, Inc.*, 8 N.Y.3d 265, 275 (2007).[6]

---

incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

[6] Although Bio Supplies alleges that Kiboko "breached the Agreement by failing to indemnify Bio Supplies," it is not clear that Bio Supplies had, by the time it filed the Amended TPC, requested indemnification from *Kiboko* because it had yet to enter into the Settlement Agreement. ECF No. 80 ¶ 35. Indeed, a plaintiff's right to indemnification does not accrue until "it suffer[s] a loss by payment to the injured party in the prior action pursuant to the settlement agreement." *Denton Leasing Corp. v. Breezy Point Surf Club, Inc..*, 518 N.Y.S.2d 634, 635 (N.Y. App. Div. 1987). Still, "indemnification claims may be asserted as cross-claims, even where a right to indemnification has not yet accrued." *Tokio Marine & Nichido Fire Ins. Co. v. Canter*, No. 07 CIV.5599 (PKL), 2009 WL 2461048, at *6 (S.D.N.Y. Aug. 11, 2009). Given the payment under the Settlement, Bio Supplies' indemnification claim has now accrued. *See Canter*, 2009 WL 2461048, at *7 (holding that an underlying settlement agreement does not relinquish

Strictly construed, the general indemnification provision of the SRA requires Kiboko, as a party to the Agreement, to indemnify Bio Supplies—as an "affiliate" of Clean Living "against any and all losses, damages, . . . settlements, . . . costs, or expenses of whatever kind, including reasonable attorneys' fees [and] the costs of enforcing any right to indemnification[,] . . . relating to any claim of a third party or Indemnified Party (collectively, "Losses") arising out of [Kiboko]'s negligence, willful misconduct, or breach of this Agreement." ECF No. 80-1 § 12.1.

Although by their default Kiboko and Raich have admitted to Bio Supplies' allegation that it was an "intended third-party beneficiary" of the SRA generally (ECF No. 80 ¶ 33), Bio Supplies has not identified a provision of the SRA reflecting such an intent.[7] Where, as a here, a merger clause establishes the parties' intent to treat an agreement as a completely integrated writing, the parol evidence rule prohibits the Court from considering extrinsic evidence to vary or contradict the written terms of the contract. *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 599 (1997); *see* ECF No. 80-1 § 13 (merger clause).[8]

Still, Bio Supplies *does* appear to be an intended beneficiary of the General Indemnification clause, which provides for indemnification of "the other Party and its officers, directors, managers, members, equity holders, employees, agents, *affiliates*, successors, and permitted assigns (collectively 'Indemnified Party')." ECF No. 80-1 § 12.1. Bio Supplies, as a subsidiary of Clean Living, is necessarily also an affiliate. *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 251 (Ct. App.

---

a party's right to indemnification) (citing *Lumbermens Mut. Ins. Co. of Kemper Grp. for Ins. Cos. v. Lumber Mut. Ins. Co.*, 538 N.Y.S.2d 542 (N.Y. App. Div. 1989)).

[7] "A party asserting rights as a third-party beneficiary must establish '(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost.'" *State of Cal. Pub. Employees' Retirement Sys. v. Shearman & Sterling*, 95 N.Y.2d 427, 434–35, (2000) (quoting *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336 (1983)).

[8] Section 13 of the SRA provides "Entire Agreement. This Agreement constitutes the sole and entire agreement between the Parties with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, regarding such subject matter."

2014) ("As a general matter, an 'affiliate' is defined as a 'corporation that is related to another corporation by shareholdings or other means of control; a *subsidiary*, parent, or sibling corporation.'") (quoting Black's Law Dictionary (9th ed. 2009)) (emphasis added).

Thus, Bio Supplies qualifies as an "Indemnified Party" under the terms of the SRA. Raich, however, is not an "*Indemnifying* Party" because, unlike Kiboko, he is not a *party* to the Agreement. *See* ECF No. 80-1 at Preamble (defining "Parties" as Clean Living and Kiboko).[9]

It is undisputed that Bio Supplies has incurred Losses in connection with AHBP's claims related to the Product, including the settlement payment and litigation costs. *See* ECF No. 121-2. However, the General Indemnification clause only provides for indemnification of Losses "arising out of *negligence*, *willful misconduct*, or *breach* of the Sales Representative Agreement" by the Indemnifying Party. ECF No. 80-1 § 12.1.

Bio Supplies insists that Kiboko breached its representation and warranty in the SRA that the Product would "comply with applicable laws and regulations." ECF No. 80 ¶ 34. This theory of Kiboko's breach fails, however, because the SRA only contemplated *Clean Living*'s marketing efforts *within the continental United States*. *See* ECF No. 80-1 § 1.1 (appointing Clean Living "as a non-exclusive independent sales representative of the [Product] . . . . to customers in the continental United States of America (the 'Territory')." Thus, Kiboko's representation and warranty that the Product "compl[ied] with all applicable federal, state, and administrative laws, rules, orders, codes, statutes, or regulations ('Laws') applicable to the Product[]" was

---

[9] Although the SRA was executed by Via Clean's CEO and enumerates Via Clean's obligations under the SRA, Via Clean is not included in the definition of "Party" or "Parties," presumably due to a scrivener's error. Relatedly, the Amended TPC alleges that days after AHBP filed suit, Lynd, Clean Living, and Bio Supplies wrote to Via Clean and demanded indemnification under the Agreement. ECF No. 80 ¶ 28. Confusingly, it goes on to allege that "*Bio Supplies* and Kiboko have failed to respond to the demand for indemnification. *Id.* ¶ 29. It is not clear why Bio Supplies would be expected to respond to its own demand for indemnification. Even if Bio Supplies intended to allege that *Kiboko* failed to respond to such a demand, the Amended TPC never alleges that Bio Supplies requested indemnification from Kiboko in the first place.

geographically limited to the laws in the Territory in which *Clean Living* would be marketing the Product, *i.e.*, the continental United States. ECF No. 80-1 § 4.3(f). AHBP's claims, in contrast, arose out of efforts to market the Product in *Argentina*.

Simply put, the SRA did not require Kiboko to make any representations to Bio Supplies about the Product's compliance with the laws of Argentina. Indeed, given Bio Supplies' failure to establish that it was an intended third-party beneficiary of the Agreement, the SRA did not require Kiboko to make any representations to Bio Supplies whatsoever. Thus, Bio Supplies is not entitled to contractual indemnification under SRA based on Kiboko's breach of the SRA.

Although Bio Supplies alleges separate claims against Kiboko for fraud and negligent misrepresentation—claims that, if established, would presumably qualify as "negligence" or "willful misconduct" within the meaning of the General Indemnification provision—the Amended TPC does not identify those theories of liability for contractual indemnification. *See* ECF No. 80 ¶¶ 30–37 (asserting only that Kiboko breached its representation as to legal compliance and its duty indemnify Bio Supplies). Thus, Kiboko has not admitted to any facts showing a contractual duty to indemnify Bio Supplies based on Kiboko's negligence or willful misconduct. Moreover, as discussed herein, Bio Supplies has not plausibly alleged claims for fraud and negligent misrepresentation.

In sum, Bio Supplies has failed to adequately allege a claim for contractual indemnification, largely because the SRA does not appear to govern Kiboko's conduct in this case.[10]

---

[10] Language in the Resale Agreement suggests that Bio Supplies was authorized to distribute the Product in Argentina under a *different* agreement with Via Clean: "Bio Supplies represents, warrants and covenants that it is an authorized distributor of the Products and is authorized to enter into this Agreement pursuant to contractual arrangements with [Via Clean], the manufacturer of the Products." ECF No. 27-1 at Recitals. The Court has no insight into the provisions of this agreement, however, including whether it contains an indemnification or choice-of-law provisions applicable to Bio Supplies' claims in this action.

### 4.     Common-law indemnification and contribution

In Texas, "[t]he availability of common law indemnity is extremely limited." *Garza v. Ford Motor Co.*, 423 S.W.3d 442, 446–47 (Tex. App.—San Antonio 2013). Common-law indemnity requires an adjudication of the manufacturer's liability or an admission of liability by the manufacturer. *See Gen. Motors Corp. v. Hudiburg Chevrolet, Inc.,* 199 S.W.3d 249, 255 (Tex. 2006) ("The indemnitor must be liable or potentially liable for the product defect, and his liability must be adjudicated or admitted."). Bio Supplies cannot sustain a claim for common-law indemnification against Kiboko under Texas law because Kiboko did not manufacture the product and has not been found liable or admitted to liability for any defect in the Product.

### 5.     Fraud

Under Texas law, there are two types of common-law fraud: (1) simple fraud, also known as fraudulent misrepresentation, and (2) fraudulent inducement, which is when someone allegedly induces another to enter into a contract by using false representations." *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 660 (W.D. Tex. 2019).

Although fraudulent misrepresentation and fraudulent inducement are separate causes of action, both have the same elements. *Id.* These elements are (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 212 (5th Cir. 2009).

The Court assumes that Bio Supplies has adequately alleged all but the third element— scienter. Typically, even under Rule 9(b)'s heightened pleading standard, "[m]alice, intent,

knowledge, and other conditions of a person's mind may be alleged *generally*." FED. R. CIV. P. 9(b) (emphasis added). The Amended TPC does contain general scienter allegations:

> Via Clean and Kiboko, through Raich, had *actual knowledge* of the materially false and misleading representations and omissions in their communications with Bio Supplies; or, in the alternative, Via Clean and Raich had a *reckless disregard* of the materially false and misleading representations and omissions contained therein.
>
> [. . . .]
>
> In providing the Report, which *as set forth in his affidavit*, attached hereto as Exhibit B, was modified from the original, *Raich directed, controlled, approved, and ratified the conduct that has caused Bio Supplies injury*.
>
> *As set forth in his affidavit*, attached hereto as Exhibit B, *Raich* actively participated in the above-described conduct and *had knowledge of the materially false and misleading representations and omissions*.

ECF No. 80 ¶¶ 50, 52, 53.

The statements in Raich's declaration, however, do not support Bio Supplies' allegations. To the contrary, Raich asserts that he "accidentally sent" a version of the Report that had been modified, that the document "was found to be wrong," and that, "[a]s soon as this was brought to [his] attention, [he] reached out to Dr. Lukas Porosa and asked [him to] reach out to the lab and have the lab send [Dr. Porosa] the non-modified correct paperwork." ECF No. 80-2, Raich Decl. ¶ 1. Raich further explains that he is "not a chemist" and "accidentally forwarded" a "corrupted or incorrect file that was in a data file in my archives." *Id.* ¶ 2.

Given the contradictory allegations in the Amended TPC, the Court cannot reasonably infer that Raich made the purported misrepresentations in the Report knowingly or recklessly. *Innova*, 995 F. Supp. 2d at 602; *Stockstill*, 561 F.3d at 384; *Phillips*, 401 F.3d at 642; *see also* ECF No. 80-1, Raich Decl. ¶ 2 ("From my understanding the actual lab results were of the passing or approved results.").

Finally, even if Bio Supplies has plausibly alleged Kiboko and Raich's culpable state of mind, the Raich affidavit appears to create a triable issue of fact as to scienter. In deciding whether to exercise its discretion to enter default judgment, the courts consider, among other things, whether material issues of fact exist. *Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir. 1998). The existence of a material fact issue as to Kiboko and Raich's state of mind counsels against entering default judgment as Bio Supplies' fraud claim. *Id.*

### 6.    Negligent misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must show that "(1) the defendant made a representation in the course of its business or in a transaction in which it had an interest, (2) the defendant supplied false information for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation." *Kersh v. UnitedHealthcare Ins. Co.*, 946 F. Supp. 2d 621, 638–39 (W.D. Tex. 2013) (quoting *Cunningham v. Tarski*, 365 S.W.3d 179, 186–87 (Tex. App.—Dallas 2012, pet. denied)).

Here again, the Amended TPC generally alleges scienter:

Kiboko and Raich did not exercise reasonable care or competence in obtaining or communicating the false and misleading information.

In providing the Report, which as set forth in his affidavit, attached hereto as Exhibit B, was modified from the original, Raich directed, controlled, approved, and ratified the conduct that has caused Bio Supplies injury.

As set forth in his affidavit, attached hereto as Exhibit B, Raich actively participated in the above-described conduct and had knowledge of the materially false and misleading representations and omissions.

ECF No. 80 ¶¶ 59–61.

Still, the Court cannot reasonably infer from Raich's affidavit that, by "accidentally" sending a file relying on the "data files in his archives," he failed to exercise reasonable care or competence in obtaining or communicating the information in the Report. And again, the existence of a material fact issue as to Kiboko and Raich's state of mind counsels against entering default judgment on Bio Supplies' claim for negligent misrepresentation. *See Lindsey,* 161 F.3d at 893.

## III.     Leave to Amend

Typically, based on the deficiencies in Bio Supplies' citizenship allegations and the substance of its claims, the Court would permit Bio Supplies to file an amended complaint curing the defects identified in this order and require it to serve Kiboko and Raich with a copy of the revised pleading—resetting the clock for Kiboko to retain counsel and for Raich to file an answer or other response.

Rule 15(a) of the Federal Rules of Civil Procedure governs amendment of the pleadings before trial. Although the Court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend is not automatic. *N. Cypress Med. Center Operating Co., Ltd. v. Aetna Life Ins. Co*., 898 F.3d 461, 477 (5th Cir. 2018). The decision to grant or deny a motion to amend is within the sound discretion of the trial court. *Id.* In exercising its discretion, the district court considers such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, and futility of amendment." *Id.* For futility, "[a]n amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Id.*

Even if Bio Supplies could cure the jurisdictional defects in the Amended TPC, however, the Court is not satisfied that Bio Supplies could amend its allegations to sufficiently plead it substantive claims for relief. The SRA does not appear to govern Kiboko's conduct in this case

and thus does not appear to support Bio Supplies' claim for contractual indemnification. Likewise, Raich's affidavit undermines Bio Supplies' scienter allegations in support of its claims for fraud and negligent misrepresentation.

Given the Court's dismissal of all remaining claims in this action pursuant to the Settlement, its doubtful subject matter jurisdiction, and the likely futility of further amendments, the Court will not grant Bio Supplies leave to file an amended Third Party Complaint. To the extent that Bio Supplies believes that it can replead any of its claims against Kiboko or Raich in accordance with its obligations under Rule 11, it may do so by filing a new action in the appropriate forum, which may or may not be the Western District of Texas.[11]

## CONCLUSION

Accordingly, Bio Supplies, LLC's motion for default judgment against Third-Party Defendants Kiboko, Inc. and Joseph Raich (ECF No. 140) is **DENIED.** Bio Supplies' claims are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

The Clerk is **DIRECTED** to **CLOSE** this case.

It is so **ORDERED**.

**SIGNED** this 6th day of June, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[11] While the Court has determined that the SRA does not govern these proceedings, it is worth noting that the Agreement contained a forum selection clause requiring that "[a]ny legal suit, action, or proceeding arising out of or related to this Agreement and all contemplated transactions shall be instituted exclusively in the state courts of Nassau County, New York." ECF No. 80-1 ¶20. To the extent that Bio Supplies' claims against Kiboko and Raich are governed by some other agreement—perhaps the contract with Via Clean referenced in the Resale Agreement—that document may shed light on the appropriate choice of law and venue.